397 P.2d 729

Bruce STERLING, d/b/a Sterling Construction Company, Plaintiff-Appellee,

v.

B. & E. CONSTRUCTORS, INC., and Trinity Universal Insurance Company, Defendants-Appellants.

No. 7525.

Supreme Court of New Mexico.

Dec. 21, 1964.

Dazzo, Dazzo & Ashby, Albuquerque, for appellants.

Palmer & Frost, Farmington, for appellee.

COMPTON, Chief Justice.

This is an action by the plaintiff to recover the sum of $1,000.00 for services performed by him for the defendant, B. & E. Constructors, Inc. Trinity Universal Insurance Company, surety for B. & E. Constructors, Inc., was joined as a defendant. The appeal is from a judgment for the plaintiff, and from a dismissal of the counterclaim of B. & E. Constructors, Inc. seeking reimbursement for sums paid to a third party for the performance of work which it alleges the plaintiff failed to perform. Since, admittedly, the defendant insurance company will be bound by the mandate of this court, our mention herein of appellant will refer to the B. & E. Constructors, Inc.

The appellant was a general contractor for the Bureau of Indian Affairs on a school construction project at Wide Ruins, Arizona. In August, 1961, its president entered into a verbal contract with the appellee to do site grading work on the project. A portion of the work was to be done on an hourly basis, and it was agreed that the appellee would receive 18 cents for each cubic yard of earth moved by him. The appellee commenced work about the middle of September, 1961, and, on or about December 5, 1961, after going over the project with the appellee, the appellant's superintendent told him there was nothing more for him to do and terminated his work. Thereafter, the appellee went to the appellant's office in Albuquerque where he was furnished by its president with a description of the work done by him and with figures representing the number of cubic yards of earth he had moved. Based upon these figures, the appellee prepared and submitted his statement for

services.. Part payment was received in December, 1961, and on March 8, 1962, the appellee received a remittance advice from the appellant, with a check for the balance "Less retainage on Oxidation ponds until checked. $1,000.00." This action was commenced on the appellant's subsequent refusal to pay the amount retained.

Under its points relied upon for reversal, the appellant challenges the sufficiency of the evidence to support two of the court's findings of fact, and claims error by the court in denying its requested findings to the contrary. The challenged findings are:

"7. That pursuant to said verbal agreement the plaintiff performed all work and construction which he was obligated to perform under the oral contract, on or before December 5, 1961, at which time the Superintendent of the defendant B. & E. Constructors, Inc., terminated the work of the plaintiff; that at said time and place the Superintendent was acting within the scope of his authority and agency as Superintendent for the defendant.

"8. That any dirt work performed by or for the defendant B. & E. Constructors, Inc., after December 5, 1961, was dirt work not within the scope of the verbal contract entered into between plaintiff and defendant B. & E. Constructors, Inc."

In considering whether these findings are supported by substantial evidence we are required to view the evidence in its most favorable light to support them. Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438; Jackson v. Goad, 73 N.M. 19, 385 P.2d 279. And, where the evidence is conflicting, it is not the function of this court to weigh the evidence or the credibility of the witnesses but to resolve the conflicts in favor of the successful party and to indulge all reasonable inferences in support of the judgment. Bogle v. Potter, 72 N.M. 99, 380 P.2d 839; Dodson v. Eidal Mfg. Co., 72 N.M. 6, 380 P.2d 16.

Bearing these rules in mind, we have examined the evidence as it relates to the verbal contract and to the scope of the authority of the superintendent. The substance of the testimony of the appellee is that the verbal agreement was made over the telephone and that he had neither seen the plans and specifications for the project nor agreed to move any specific number of yards of dirt; that he was to work for the appellant as he had in the past, to move his equipment on the job before any construction was begun and do the initial dirt moving either according to the engineer's stakes which marked the cut or fill to be made, or at the direction of an engineer or superintendent; that when he went on this job an engineering firm was staking it; that he was told to proceed to scrape

the area by clearing away trees and rubble; that other than this preliminary scraping and clearing he worked either according to the engineer's stakes or as directed by the superintendent who came on the job several days after he commenced work; that if there was a question as to what a stake meant he and the superintendent would look at the plans together in arriving at an answer; that as soon as he finished the site grading in the housing and school areas sometime in November, 1961, he moved to the sewage pond area and completed that work.

The appellee further testified that, thereafter, on or about December 5, 1961 "Mr. Ruse [the superintendent] and I went together over the project, and were looking for anything else I could do there and they let me cut an access road at the bottom of the area, he let me do some back fill work on the sewer line that had already been installed, and he let me pile up some gravel they were moving in for concrete mix, and after we had finished that I was informed by Mr. Ruse that there [was] nothing more for me to do," and that at no time after December 5, 1961, was he ever requested to do additional work, although his equipment remained on the jobsite for several weeks.

Moreover, the testimony of the appellant's president points up the authority of its superintendent. He stated that he visited the project about twice a month and was on the jobsite about twice during the time the appellee worked there; that he had a superintendent on the job who made daily progress reports to him; that the appellee could not do any work on the jobsite without approval of the engineer or under the supervision of the superintendent; that the dirt moving work to be done by the appellee was on a yardage and not a lump sum basis; that it was not within the "boundaries" of the superintendent to terminate the appellee's work but that he would "probably not" expect the appellee to doubt the superintendent's authority.

█  The authority of the superintendent being admitted, it is only the extent of that authority which is questioned. The appellant takes the position that the appellee was to do all site grading work on the project, that he knew that only the engineer could accurately determine the requirements of the job, and consequently there was no apparent authority in the superintendent to terminate the appellee's work. This position has no merit. It is contrary to the evidence as to the terms of the verbal contract and to the manner of its performance. A third person dealing with an agent is not bound by any limitations or restricitions placed upon the agent by the principal, if any there be, of which he has no notice. Raulie v. Jackson-Horne Grocery, 48 N.M. 556, 154 P.2d 231; Doug-

lass v. Mutual Ben. Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453; 2 Mechem on Agency, § 1723.

■ We conclude there was substantial evidence to support the findings of the trial court. Thus, the court did not err in denying the appellant's requested findings to the contrary. Herrera v. C & R Paving Company, 73 N.M. 237, 387 P.2d 339. Nor did the court err in dismissing the appellant's counterclaim. In this latter connection it should be pointed out that the sole relief sought was reimbursement for the cost of having the work completed by one other than the appellee. No claim was made therein that the appellee failed to perform the work for which he claimed payment. However, by evidence introduced at the trial and by a requested finding of fact, the appellant sought to justify the retention of a portion of the money withheld for reasons other than that stated in the remittance advice. The court properly disregarded this evidence. This is obviously true in view of the statement of the appellant's president, in answer to questions by the court, that to the best of his knowledge, except for his counterclaim, the appellee was due the amount retained for the work he did perform.

The judgment should be affirmed, and it is so ordered.

CARMODY and CHAVEZ, JJ., concur.