**Clinton E. HUTCHCRAFT and Clinton E. Hutchcraft d/b/a Hutchcraft & Associates, Appellant (Defendant Below),**

v.

**EASTERN INDIANA PRODUCTION CREDIT ASSOCIATION, Appellee (Plaintiff Below).**

**No. 2–484 A 110.**

Court of Appeals of Indiana, Second District.

Dec. 23, 1985.

Rehearing Denied March 13, 1986.

L. Peterson Iverson, Indianapolis, for appellant.

Thomas G. Stayton, Indianapolis, Jeffrey S. Nickloy, Noblesville, for appellee.

SHIELDS, Judge.

Clinton E. Hutchcraft (Hutchcraft) appeals a judgment against him in Eastern

Indiana Production Credit Association's (EIPCA) breach of contract action.

Hutchcraft claims numerous errors in the trial court's judgment. However, we address only one error which constitutes reversible error: whether the trial court's interpretation of the April 2, 1981 agreement is contrary to law. Further, because the trial court's judgment is reversed we do not reach the cross-error raised by EIPCA concerning the trial court's failure to award EIPCA prejudgment interest.

We reverse.

*Facts*

On April 2, 1981 the parties executed an agreement entitled "Lease and Option to Purchase Agreement" (Option). The Option contained the following relevant provisions:

"FURTHER CONDITIONS: (1) Purchase price to include all existing improvements and equipment (2) Contract to be 10 yrs. contract with balloon at end (3) Soil test to be made within 90 day period. (4) Purchaser would like to sign lease and have possession of property on or before 4–13–81. (5) Price 525,000.00 with 25,000.00 dollar lease to be applied to 525,000.00 at time of closing. Purchaser will lease with option to buy from 4–13–81 to 11–15–81 at that time purchaser will notify if they plan to fulfill option to close on 1–2–82 with another 75,000 down at closing."

Record at 321.

Thereafter, on April 17, 1981 the parties executed a second agreement entitled "Cash Lease and Option to Purchase" (Lease). In addition to lease provisions the Lease contained the following paragraph:

"9. Lessor hereby grants to Lessee the right and option to purchase said real estate. Attached to this agreement is a "Contract for the Conditional Sale of Real Estate", hereinafter referred to as "Contract" which contract is being executed by the parties at time of execution of this agreement and pertains to the sale of the same real estate from Lessor to Lessee. *If Lessee shall deliver to Lessor the Seventy-five Thousand Dollar ($75,000) sum called for in said contract at Paragraph I-2(a), by January 2, 1982, then, this option shall be deemed to have been exercised by Lessee and the sale shall be deemed to have been closed according to the contract terms; otherwise, if Lessee shall fail to deliver said sum the option shall terminate and said contract shall be deemed void and unenforceable by the parties."*

Record at 325 (emphasis added).

The contract of sale described in the Lease was neither attached to the Lease nor executed by Hutchcraft.

Hutchcraft failed to tender any monies other than the lease payments and consequently the real estate sale was never closed. EIPCA filed its complaint for damages arising from Hutchcraft's asserted breach of contract to purchase real estate. The trial court entered judgment for EIPCA in the amount of $129,680 and its costs.

*Discussion*

The essence of the dispute between the parties is the content of their agreement on the manner of exercising the option. Absent any ambiguity, the interpretation of a contract is a question of law. *McNevin v. McNevin*, 444 N.E.2d 320 (Ind.App.1983).

Option contracts commonly provide for a date when, or a time period within which, the option must be exercised. However, some option contracts contain a further provision requiring notice of intent to exercise the option within a specified period prior to the expiration of the option. *See generally* Annot., 72 A.L.R.2d 1127 (1960).

A factually similar situation was addressed by the Oregon Supreme Court in *Albachten v. Miller*, 216 Or. 379, 339 P.2d 427 (1959). The issue in *Albachten*, a suit for specific performance of an option contract for the sale of real estate, was the interpretation of clauses in the option which gave the optionee:

"the exclusive right and option to purchase, on October 1, 1955, but not prior thereto, for the sum of.... the real prop-

erty.... In the event optionee shall decide to exercise this option on October 1, 1955, she shall give the optioners not less than thirty (30) days notice in writing of her intention so to do."

339 P.2d at 428. In decreeing specific performance, the Oregon Supreme Court held the giving of notice did not constitute the exercise of the option but "was merely 'notice ... of her intention so to do'.... No binding contract came into being with the notice. Contractual rights would vest only with the exercise of the option on October 1st, 1955." 339 P.2d at 429.

Our perusal of the April 2, 1981 Option [1] convinces us Hutchcraft's act of giving notice of his "plan to fulfill option" was not intended to and did not constitute the exercise of the option but rather, was notice of his intent to do so. The use of the phrase "will notify if they plan", connotes intent rather than action. Notice was a condition precedent of Hutchcraft's right to exercise the option on January 2, 1982 by delivering $75,000 and a Conditional Sales Contract. Until that sum and document were delivered, a binding contract was not formed.

That this is, in fact, the parties' agreement is supported by paragraph 9 of the Lease. Although the contract described in the Lease was not executed, thus impinging upon the efficacy of paragraph nine, it nevertheless reaffirms the parties' intent expressed in the Option that the exercise of the Option was conditioned upon the payment of $75,000 by January 2, 1982.

The trial court found Hutchcraft's letter of November 13, 1981 gave the required notice of intent. We agree. It additionally found that the parties, in a series of letters, subsequently agreed to various changes in the closing date with the last date being March 15, 1982. While the accuracy of these latter findings are disputed, their accuracy is immaterial. Whether the closing

date was agreed as January 2, 1982, January 25, 1982 or March 15, 1982 is inconsequential because Hutchcraft never paid the $75,000 or any part thereof on any of those dates. Thus, Hutchcraft failed to exercise the option. Failing to exercise his option, Hutchcraft could not and was not in default of a contract to purchase real estate which never came into existence.

Judgment reversed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

1. The trial court concluded Hutchcraft was obligated to purchase the real estate in accordance with the terms of the Lease and Option Purchase Agreement dated April 2, 1981. Inasmuch as this is also the position taken by EIPCA we accept the trial court's conclusion despite Hutchcraft's argument to the contrary because

it nevertheless results in a reversal. Of course, if the April 17, 1981 Cash Lease and Option to Purchase was a binding agreement reversal of the trial court's judgment would necessarily be required under the provisions of paragraph 9 of that document.