FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 13

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Detention of:

JACK LECK, II,

         Petitioner.

No. 42573-4-II

PUBLISHED OPINION

PENOYAR, J. — Jack Leck II appeals a jury verdict determining him to be a sexually violent predator (SVP). In 1984, Leck was convicted in Alaska of crimes that are considered sexually violent offenses under Washington's SVP laws. After his release for these crimes, Leck was convicted in 2003 in Kitsap County, Washington, for possession of depictions of a minor engaged in sexually explicit conduct.

In 2008, the State filed a petition in Kitsap County to have Leck committed as an SVP. In the petition, the State alleged that Leck had a mental abnormality that predisposed him to commit sexually violent acts in the future. At Leck's commitment trial, the jury was instructed that it could find that Leck was an SVP based either on this mental abnormality or on a personality disorder not mentioned in the petition. The jury found that Leck was an SVP, and the court ordered him committed.

Leck appeals, arguing that the State had no authority to file a petition against him under the law in effect in 2008. Leck further argues that retroactive application of the law as amended in 2009, which clearly gave the State authority to file a petition in situations like Leck's, would deny him due process. Here we follow *In re Detention of Durbin*, 160 Wn. App. 414, 248 P.3d 124, *review denied*, 172 Wn.2d 1007 (2011), a case involving analogous facts, in which we held

that the State had authority to file an SVP petition under the 2008 law and that retroactive application of the 2009 law did not violate due process. Leck also argues, however, that his due process right to notice was violated when the jury was instructed on the personality disorder. Because the petition against Leck cannot be construed even liberally to include the personality disorder element as a charged element and thus satisfy due process, we reverse and remand. On remand, the State may either file a new SVP petition against Leck or amend the 2008 petition for a new commitment proceeding.

FACTS

I.    FACTUAL BACKGROUND

Leck was convicted in 1984 in Alaska of second degree sexual abuse of a minor and second degree attempted sexual abuse of a minor. For purposes of Washington's SVP laws at chapter 71.09 RCW, these two convictions amount to "sexually violent offenses."[1] Leck was released on parole from confinement for these offenses in July 1996. After being in and out of confinement for various parole violations, Leck was unconditionally released from confinement in September 2002.

In April 2003, Leck applied for a membership at the YMCA in Bremerton, Washington. A YMCA employee, aware that Leck was a sex offender in Alaska, contacted Bremerton police. Having been informed by Leck's family[2] when Leck was released in 2002 that he might try to enter the Bremerton YMCA, the police contacted the address Leck had left there; the address was for a charitable organization at which Leck had begun volunteering a week earlier. The police searched the organization's computer to which Leck had had access during that week,

---

[1] RCW 71.09.020(17) defines "sexually violent offense."

[2] Leck's family lived in the Bremerton area at this time.

discovering numerous images downloaded during that time of minors engaged in sexually explicit conduct. Leck was arrested and later convicted in Kitsap County Superior Court of 46 counts of possession of depictions of a minor engaged in sexually explicit conduct.

II.    PROCEDURAL BACKGROUND

In April 2007, shortly before Leck completed serving his sentence for the Kitsap County conviction, the State filed a petition[3] in Thurston County alleging that Leck was an SVP.[4] Leck was transported first to the Thurston County jail and then, after a probable cause finding under RCW 71.09.040, to the Special Commitment Center on McNeil Island to await his commitment trial.

In May 2008, before Leck's trial, the Washington Supreme Court issued *In re Detention of Martin*, holding that an SVP petition was improperly filed in Thurston County where Martin, the alleged SVP, had committed sexually violent offenses outside Washington and offenses that were not sexually violent in Clark County, Washington. 163 Wn.2d 501, 504-05, 182 P.3d 951 (2008). In view of *Martin*, the State moved to dismiss the Thurston County petition against Leck

---

[3] RCW 71.09.030 governs filing SVP petitions. The 1995 version of the statute was in effect when the State filed the petition against Leck in Thurston County. The legislature amended this version of the statute in 2008, but this amendment merely made one technical correction to the statute that is immaterial to our analysis here. *See* LAWS OF 1995, ch. 216, § 3; LAWS OF 2008, ch. 213, § 12. The 2008 version of the statute was in effect when the State refiled its petition against Leck in Kitsap County. The current version of the statute reflects the legislature's substantive amendments in 2009. *See* LAWS OF 2009, ch. 409, § 3.

[4] "'Sexually violent predator' means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). The previous version of RCW 71.09.020 in force when the State filed its petitions against Leck in Thurston and Kitsap Counties provided this same definition of "sexually violent predator." *See* former RCW 71.09.020(16) (2006).

and—at the request of the Kitsap County prosecutor—filed a petition against Leck instead in Kitsap County in July 2008.

The Kitsap County petition was based on consulting psychologist Dale Arnold's 2006 evaluation of Leck in which Arnold diagnosed Leck with pedophilia.[5] As grounds for filing the petition, the State alleged that Leck had a mental abnormality—namely, pedophilia—but did not allege any personality disorder.[6]

Leck moved to dismiss the petition in December 2008 for lack of jurisdiction and probable cause, arguing that he was unlawfully detained at the time the State filed the petition in Kitsap County. Relying on *In re Detention of Keeney*, 141 Wn. App. 318, 330, 169 P.3d 852 (2007), the trial court concluded that an unlawful detention under a criminal proceeding does not divest the court of its power to process an SVP petition, and so the court denied Leck's motion in May 2009.

---

[5] Leck refused an interview with Arnold in 2005 for purposes of Arnold's initial evaluation of Leck; as a result, Arnold based his evaluation on a review of records alone.

[6] Although the SVP definition included the term "personality disorder" as early as 2006, the legislature did not include a definition for "personality disorder" in RCW 71.09.020 until 2009. *See* LAWS OF 2009, ch. 409, § 1. When the State filed its SVP petitions against Leck in 2007 and 2008, however, the definition of "sexually violent predator" already included "personality disorder" as an alternative precondition to establishing a person's status as an SVP. *See* RCW 71.09.020(16) (2006).

Then, in October 2010, the State moved for a ruling that, as a matter of law, Leck's 2003 conviction for possession of depictions of minors engaged in sexually explicit conduct qualified as a recent overt act,[7] which would relieve the State of its burden to prove a recent overt act at trial.[8] Attached to the State's motion was an update to Arnold's evaluation based on Arnold's face-to-face interview with Leck in September 2010. In the updated evaluation, Arnold diagnosed Leck with a personality disorder that predisposed him to commit criminal sexual acts. At no point, however, did the State amend the petition to include this personality disorder as grounds for the petition.

Treating the State's recent-overt-act motion as one for partial summary judgment, the trial court denied the motion, pointing to conflicting expert opinion on Leck's mental condition. The State moved for reconsideration. At the reconsideration hearing, with Leck present

---

[7] "'Recent overt act' means any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(12). The previous version of RCW 71.09.020 in force when the State filed its petitions against Leck in Thurston and Kitsap Counties provided a substantially similar definition of "recent overt act." *See* former RCW 71.09.020(10) (2006). The minor changes made to this definition in 2009 do not affect our analysis here. *See Durbin*, 160 Wn. App. at 426.

[8] Due process requires showing that the alleged SVP, if released into the community, is currently dangerous; showing a recent overt act satisfies this dangerousness element. *In re Det. of Albrecht*, 147 Wn.2d 1, 10-11, 51 P.3d 73 (2002). The State does not need to show a recent overt act to prove current dangerousness, however, when, on the day the State files the petition, the alleged SVP is confined for an act that meets the statutory definition of a recent overt act. *In re Det. of Marshall*, 156 Wn.2d 150, 157, 125 P.3d 111 (2005). "[T]he inquiry whether an individual is incarcerated for an act that qualifies as a recent overt act is for the court, not a jury." *Marshall*, 156 Wn.2d at 158.

telephonically, the trial court vacated its previous ruling and granted the State's motion, ordering that Leck's 2003 conviction qualified as a recent overt act.[9]

At trial, the court gave the following jury instruction on finding whether Leck was an SVP:

> To establish that Jack Leck, II is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:
> (1) That Jack Leck, II has been convicted of a crime of sexual violence, namely the Alaska offense of Sexual Abuse of a Minor in the Second Degree and/or Attempted Sexual Abuse of a Minor in the Second Degree;
> (2) That Jack Leck, II suffers from a mental abnormality *or personality disorder* which causes serious difficulty in controlling his sexually violent behavior; and
> (3) That this mental abnormality or personality disorder makes Jack Leck, II likely to engage in predatory acts of sexual violence if not confined to a secure facility.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict that Jack Leck, II is a sexually violent predator.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one or more of these elements, then it will be your duty to return a verdict that Jack Leck, II is not a sexually violent predator.

Clerk's Papers (CP) at 1580 (emphasis added). The court further instructed the jury with definitions on "mental

---

[9] Leck argues that his due process right to be present was violated when he was not allowed to be physically present for this reconsideration hearing. Because we reverse and remand for the petition's failure to give Leck adequate notice of the basis for the petition, we do not reach the issue of whether due process required that Leck have had the opportunity to be physically present at this hearing.

abnormality"[10] and "personality disorder."[11] Leck made no objections to these instructions.

The jury returned a verdict that the State had proved beyond a reasonable doubt that Leck was an SVP. The court ordered Leck be committed to the Special Commitment Center. Leck timely appeals.

## ANALYSIS

### I. AUTHORITY TO FILE THE PETITION

Leck first argues that the State did not have authority to file a petition against him under the law in effect in 2008. Leck further argues that retroactively applying the law as amended in 2009—under which the State would have had authority to file the petition—would deny him due process. But in *Durbin*, a recent case with facts analogous to those here, we held that the State had authority under the 2008 law to file the SVP petition in question. 160 Wn. App. at 429. We

---

[10] Instruction 6 read:

> "Mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit criminal sexual acts to a degree that makes the person a menace to the health and safety of others.
> "Volitional capacity" means the power or capability to choose or decide.

CP at 1582. This definition of "mental abnormality" substantially follows the language of the statutory definition at RCW 71.09.020(8). The statutory definition has been constant since the legislature first enacted Washington's SVP laws. *Compare* LAWS OF 1990, ch. 3, § 1002, *with* LAWS OF 2009, ch. 409, § 1 (reflecting the most recent version of RCW 71.09.020).

[11] Instruction 7 read:

> "Personality disorder" means an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has onset in adolescence or early adulthood, is stable over time and leads to distress or impairment.

CP at 1583. This definition of "personality disorder" reflects verbatim the language of the statutory definition at RCW 71.09.020(9). The legislature added this definition to RCW 71.09.020 in 2009. *See* LAWS OF 2009, ch. 409, § 1.

also held in *Durbin* that applying the 2009 law retroactively, which the legislature clearly had intended, did not violate due process. 160 Wn. App at 431. Accordingly, the State was not precluded here from filing the petition against Leck under either version of the law.

## II.   DUE PROCESS RIGHT TO NOTICE

Leck next argues that his statutory and due process right to notice was violated when the trial court instructed the jury on an alternative means (personality disorder) not mentioned in the petition alleging that Leck was an SVP. The State responds that Leck waived this argument by not challenging the instructions at trial. But instructing the jury on an alternative means not alleged in the petition is a manifest constitutional error that Leck may raise for the first time on appeal. We review such challenges raised for the first time on appeal more strictly against the challenger, liberally construing the petition to see whether the apparently missing element can be implied from the petition's language. Here, the missing alternative means (personality disorder) cannot be implied from the petition even under the most liberal of constructions. Evidence that Leck had a personality disorder was presented to the jury, and the jury was instructed that it could use the existence of this condition to find a necessary element of the State's case—that Leck had a mental illness. All necessary elements of the case, however, must appear in the SVP petition to satisfy the due process requirement of notice. Because the State did not include the personality disorder alternative to the mental illness element in its petition against Leck, we must reverse and remand.

### A.   RIGHT TO NOTICE IN AN SVP PROCEEDING

When the State files an SVP petition, the petition must "alleg[e] that a person is a sexually violent predator and stat[e] sufficient facts to support such allegation." RCW

8

71.09.030(1).[12] And although SVP proceedings are civil, a person who is the subject of this kind of proceeding is nonetheless entitled to certain due process protections guaranteed by the Fourteenth Amendment. *Specht v. Patterson*, 386 U.S. 605, 608-10, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967); *In re Det. of Stout*, 159 Wn.2d 357, 369, 150 P.3d 86 (2007).[13] The right to notice is an essential requirement of due process that applies to civil as well as criminal proceedings. *See Downey v. Pierce County*, 165 Wn. App. 152, 164, 267 P.3d 445 (2011) (essential principle of due process is right to notice and a meaningful opportunity to be heard) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)), *review denied*, 174 Wn.2d 1016 (2012). "To ensure due process, the State must give pretrial notice with all necessary elements of the charge." *In re Pers. Restraint of Benavidez*, 160 Wn. App. 165, 171, 246 P.3d 842 (2011) (citations omitted). The existence of a mental abnormality or personality disorder from which a person suffers is an element the State must prove beyond a reasonable doubt if that person is to be committed as an SVP. *In re Det. of Post*, 170 Wn.2d 302, 309-10, 241 P.3d 1234 (2010). "'Mental abnormality' and 'personality disorder' are two distinct means of establishing the mental illness element in SVP cases." *In re Det. of Halgren*, 156 Wn.2d 795, 811, 132 P.3d 714 (2006). Accordingly, if the State seeks to commit a person as an SVP on grounds that he has a personality disorder, the State must allege that personality disorder in the petition.

---

[12] Former RCW 71.09.030 (2008), under which the State filed its petition against Leck in Kitsap County, had this same requirement.

[13] "These commitment proceedings [of sex offenders] whether denominated civil or criminal are subject . . . to the Due Process Clause." *Specht*, 386 U.S. at 608.

Leck clearly has a right to have pretrial notice in the petition of the necessary elements of the State's SVP allegation. The State must allege in the petition whether Leck has a mental abnormality, a personality disorder, or both because the existence of such a condition is a necessary element in an SVP case. If the State failed to allege the existence of a personality disorder in the petition, the State was not entitled to an instruction on personality disorder. If the trial court instructed the jury that it could find that Leck was an SVP based upon a non-alleged personality disorder, the court clearly violated Leck's due process right to know of and prepare to defend himself against this allegation.

B.    CHALLENGE FOR THE FIRST TIME ON APPEAL

A party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a). Because a challenge to the sufficiency of a charging document—including, as here, an SVP petition—involves the constitutional due process right to notice, a party may initially make the challenge to this court. *See State v. Leach*, 113 Wn.2d 679, 691, 782 P.2d 552 (1989). When a party first challenges a charging document's sufficiency on appeal, we review the challenge more strictly against that party by liberally construing the document in favor of its validity. *State v. Kjorsvik*, 117 Wn.2d 93, 105, 812 P.2d 86 (1991). Included within this heightened standard of review are an essential-elements prong and an actual-prejudice prong. *Kjorsvik*, 117 Wn.2d at 105. Under the essential-elements prong, we review the document for language from which we can imply the allegedly missing element; if we cannot find any such language, the challenging party prevails. *Kjorsvik*, 117 Wn.2d at 106. If we do find such language, but it is vague or inartful, then the challenging party, under the actual-prejudice prong, has a second chance at prevailing if this language prevented the party from receiving actual notice of the missing element. *Kjorsvik*, 117 Wn.2d at 106.

10

Because Leck's argument is that his constitutional due process right to notice was violated when the court instructed the jury on a personality disorder—an element not included in the petition—Leck may raise this issue for the first time on appeal.[14] We review the issue by, first, liberally construing the petition for language that may imply this missing element.

C.   ALTERNATIVE MEANS MISSING IN PETITION

Under the liberal-construction standard of review, the essential-elements prong is the first prong that this court must consider by "look[ing] to the face of the charging document itself." *Kjorsvik*, 117 Wn.2d at 106. Citing *Hagner v. United States*,[15] the court in *Kjorsvik* expounded on this standard with respect to elements apparently missing from the charging document:

> [E]ven if there is an apparently missing element, it may be able to be fairly implied from language within the charging document. Many cases utilize the *Hagner* standard and hold that if the necessary facts appear in any form, or by a fair construction can be found within the terms of the charge, then the charging document will be upheld on appeal. Thus, when an objection to an indictment is not timely made the reviewing court has considerable leeway to imply the necessary allegations from the language of the charging document.

*Kjorsvik*, 117 Wn.2d at 104 (citations omitted). Merely giving the name of the offense and citing to the proper statute, however, insufficiently charges an offense unless its name apprises the accused of all essential elements.[16] *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995).

---

[14] Because we reverse on grounds that Leck's constitutional due process right to notice was violated, we do not address Leck's argument that his statutory right to notice was also violated when the trial court instructed the jury on a personality disorder not alleged in the petition. We note, however, that, as a non-constitutional issue, Leck may have waived this argument when he failed to object to this instruction at trial.

[15] 285 U.S. 427, 433, 52 S. Ct. 417, 76 L. Ed. 861 (1932).

[16] "[D]efendants should not have to search for the rules or regulations they are accused of violating." *City of Auburn v. Brooke*, 119 Wn.2d 623, 635, 836 P.2d 212 (1992).

With respect to the essential-elements prong here, the State made no explicit mention within the SVP petition of any personality disorder, alleging as the mental-illness element only Leck's mental abnormality (pedophilia). Where two alternative means of meeting the mental-illness element are available, but the State unequivocally alleges only one in the petition, the other simply cannot be read into the petition.

At the beginning of the petition, the State did allege that Leck was an SVP as defined in former RCW 71.09.020(16).[17] This definition does include the "mental abnormality or personality disorder" alternatives. But this definition is not included in the petition's text. And the petition goes on to specifically mention mental abnormality, clarifying that this abnormality is the sole allegation put forth to meet the mental-illness element. Nothing else in the petition even suggests using a personality disorder as grounds for committing Leck as an SVP. Because the petition fails under the essential-elements prong, we do not need to consider the actual-prejudice prong. We therefore reverse and remand. On remand, the State may either file a new SVP petition against Leck or amend the 2008 petition for a new commitment proceeding.

_____
Penoyar, J.

We concur:

_____
Worswick, C.J.

_____
Bjorgen, J.

_____
[17] This definition is now at RCW 71.09.020(18).

12